First case is Raritan Baykeeper versus NLIndustries. Mr. Terras, good morning. My name is Bruce Terras. I represent the appellants, Raritan Baykeeper and Edison Wetlands. I would like to reserve five minutes for rebuttal. Very good. Pull the mic a little bit closer. That's it. Thank you. Your Honors, may it please the Court. This case involves the contamination of sediments in the Raritan River next to the National Lead on-land site. It does not involve the NL National Lead on-land site except for insofar as remediation of portions of that site might be needed. What remedy are you seeking here? What remedy are we seeking? Clean up of the sediments in the river? How soon? In other words, on the timetable that's currently in place or sooner? There is no timetable in place, Your Honor. Well, New Jersey says they have it well in hand. Excuse me? New Jersey says that they have everything well in hand, that they have a plan, and they've got to take care of the upstream problem before they deal with the downstream problem. There's nothing in the record about a plan that would be well in hand or not well in hand, Your Honor. The upstream problem, EPA is taking some action on a couple of upstream sites, but the state is taking no such action. In 2004, it said that there had to be, as Your Honor has alluded to, that there has to be a regional remedy. That's the last action that the state has taken. That was a letter that had no real formal activity whatsoever, and so what's happening is this is a situation very much like ICO versus Honeywell, where the state has procrastinated for a very long time. Honeywell was on that panel. I think it was like 20-some years. It was, Your Honor, but the state started looking at this site in the 1980s. It's been actually more than 20 years since it first started looking at this site. They started looking at this site, but I think the action really kicked in around 2004, did it not? Excuse me, Your Honor? The action of the state in terms of getting this together and having remediation done really kicked in around 2004, didn't it? Nothing had happened in 2004 except for to say by a letter that it was not going to take action for the indefinite future until something was done as far as the upstream. Because what their findings showed was there wasn't a whole lot of damage to the settlement there, and if they did something and it was continuing to have a problem upstream, that, hey, we'd be throwing good money after bad, is what I thought they were saying. There's no question, Your Honor, that when the district court got to a remedy, it would have to consider what the situation was upstream, but there's no reason why a district court has to take on faith that what the DEP has found about the upstream sites being the source of much of the contamination is correct. There's very little doubt that this site, the NL site, the on-land port next door to it, is causing much, in fact, most, we would argue most of the contamination. But that's what's being addressed, right? They are addressing the on-land contamination. That is subject to an RAWP. That's correct, Your Honor, and that we are not litigating those portions. You're only litigating the sediment. And that sediment has already been contaminated. Even if they cut off all further contribution from the on-land area, the contamination of the sediment would remain and needs to be remediated. Doesn't it make sense to allow EPA to do the work on the upstream sediment contamination? Won't that result in downstream sediment contamination if that's not addressed? It will if that is, in fact, the principal source of the downstream contamination. But the district court can definitely take that into consideration, and we would urge the district court to take it into consideration. We have no interest in cleaning up the sediment any more than anybody else does and having it be recontaminated. But that's an issue that the district court ought to look at. But, Your Honor, before you get to these considerations, I submit to you that neither Burford doctrine nor primary jurisdiction applies when Congress has specifically decided when the courts have jurisdiction. Before we get to that, I may have interrupted you in responding to Judge Ambrose's question. The remedy you're seeking is cleaning up the polluted sediment at a specific site area. Is that correct? That's correct. All right. Now, you would have the option to, under New Jersey law, to ask for either review of what the New Jersey Department of Environmental Protection is doing or to bring a suit there, but you chose not to do that. We chose not to, Your Honor, because we believe that Congress has very clearly decided that the federal courts is the appropriate place when the state has not taken the kinds of actions that Congress specified under both statutes, and in those situations Congress has decided that the federal courts are the place for citizens to go to. That's exactly what we did. There is no argument that the preclusion provisions of the two statutes, whether they have been satisfied to preclude the suit. No argument has ever been made that those provisions have been satisfied. Therefore, we submit that the overwhelming case law is that in these circumstances, citizens have the right to go to federal court, and the federal courts have the responsibility to exercise their jurisdiction, and that's exactly what we did here. The only two cases that the defendants have been able to cite are radically different from this case where citizen suits have been barred in situations like that. In both those cases there were actually permits issued by the state or a consent decree that allowed the action that the defendants were taking and allowed it to occur. In this case there's the equivalent of a consent decree, right? Or at least a settlement agreement? And this is the critical thing because both the district court and the defendants keep shifting the question to be what's happening on land. That's correct, Your Honor. We deliberately did not bring a suit with regard to the on-land contamination for exactly the reason Your Honor is suggesting. Wouldn't the Clean Water Act claim concern on-land activity? You're complaining about unauthorized discharges. That's correct, Your Honor. The contamination of the settlement originated on land. We submit that overwhelmingly on land and not upstream. That's obviously disputed, but that's what we submit is what the district court should determine. And therefore, Your Honor, we think that under the very well established that the courts should exercise their jurisdiction. Only a few weeks ago the First Circuit dealt with a case quite similar to this one in which it said that it was extremely reluctant to borrow a citizen suit in these kinds of circumstances because Congress had decided when. That's the Chico Service case. That's correct, Your Honor. In that case, though, the court did look at the Burford abstention factors and decided that they did not weigh in favor of abstention. Did it rule categorically that you could not have Burford abstention in a RCRA or Clean Water Act claim? It said it was extremely reluctant. Extremely reluctant, yeah. I don't know exactly what. But I think what that means, though, Your Honor, is what happens is in almost all these cases what happens is the court says we can't allow abstention, but then it goes on to deal with the particular factors. In other words, it says both things. It says at the very least it's extremely rare to borrow a citizen suit, and then it says and it indicates Congress has made the decision, but then it goes on to show that Burford and primary jurisdiction don't apply. We argue exactly the same here. We say that abstention does not exist, but in case you think it does, those doctrines still do not apply. So if Your Honors agree with us, you would do exactly the same thing. But the doctrines do exist, do they not? Let me just say finally, Your Honor. Excuse me, Mr. Terris. The doctrines, are you saying that the doctrines do not exist or that they just have to be applied extremely sparingly? I say both things. I think off the top it doesn't exist under these statutes. When Congress has said specifically a suit is barred if A or B or C or D have occurred, and it stops, submit to Your Honors that that means that the courts, it's not appropriate to go on and say, ah, but there's an E and an F. And so, but I also submit that if that's wrong, that the courts have made clear that it's very, very rare. And the grounds that the district court used here would borrow almost all RCRA and Clean Water Act suits. Because it says, you know, the courts don't have as much expertise. Well, that occurs in every one of these cases. Let me just, since my time is up, let me just finish with one sentence, two sentences from Chief Justice Marshall a long time ago. We have no more right to decline the exercise of jurisdiction which is given than to usurp with that which is not given. The one or the other would be treason to the Constitution. That's pretty strong language, and I submit it applies here. Always good to hear Chief Justice Marshall's words. It's always good to hear Chief Justice Marshall's words. I hope it would be. All right. Any other questions? No. Good. Mr. Gibson, are you going first? All right, very good. Good morning, Your Honors. May it please the Court. My name is Christopher Gibson. I represent NL Industries, one of the appellees in this particular case. This case is… Now, supposedly there's been developing a regional plan, or at least it's been contemplated since about 2004. It's now 2011. Has this regional plan been implemented, developed, implemented, or what? I think that the regional plan in terms of having this policy, if that's what you're asking, is not in place. The regional plan is simply a recognition that was first articulated by Commissioner Campbell and then later articulated at least two or three times in front of Mr. Baker and myself by then Commissioner and now EPA Administrator Jackson, that the only sensible approach to the remediation of sediments in a river which starts and stops entirely in New Jersey is to deal with it on a regional basis. When you look at the history of our industry… But it's been seven years. I mean, what the plaintiffs, in effect, are saying is, you know, enough already. At some point, it looks like we're getting the slow walk on the state level, and if the EPA is looking at the upstream sites anyway, so that's the federal government, and you've got a case called Honeywell which says at some point, you know, you've crossed the line, and we are bringing a citizen suit that's specifically allowed under a federal statute to enforce federal laws. Why in the world is a federal court abstaining from doing that? That's what federal courts are created for. Your Honor, in this situation, I believe that two points. There are clearly a line of cases that have looked at the timing and concluded that the regulatory authority has not done the job that it was required to do under the state laws or the federal laws. What I always find strange about those arguments is the understanding, for example, in Superfund sites that it is not unusual for them to take 5, 10, even 20 years to be remediated, that what is at issue is the protection of the public health and the environment. The answer to that is yes, no, and maybe. In the 1986 Superfund sites, two of the three top sites in America were in Newcastle County, Delaware, Tybaut's Corner and Langolan, and both of them today are cleaned up completely. And many of those top 15 Superfund sites, Your Honor, were located in New Jersey. I understand. And they are also, they've moved forward. What I'm saying, and many of them are cleaned up, but that doesn't mean that this is not a process set up by Congress under the, or excuse me, by the EPA under the National Contingency Plan and by our own state DEP under what's called the technical regulations that talks about the process for delineating, defining, investigating, and remediating these sites where alacrity is not. Has the state of New Jersey taken a position on whether this action should go forward or not? Have they thought to intervene or let it be known that they think that the federal court should abstain? I'm not aware of that, Your Honor. And I don't know what to draw from that to be perfectly candid with you. I know that the state of New Jersey on many occasions, its function is to protect the public health and the environment. It is not to support the regulated community or the environmental community. Is there a plan? Has the New Jersey agency formulated a specific plan with a timetable? It has formulated a plan in that there is a logical sequence to what must happen. Other than the letter that was referenced earlier, is there anything else that's? The answer is that there's no formal enforcement action going on river wide at this moment. But there is inherently in these processes a logical sequence. If, for example, our site is contributing contamination to the river, then the first step is not to clean up the river in front of our site. The first step is to clean up the contamination that is a source to the river. And to come into the federal court and say, no, the river must be cleaned up first before you clean up the Saraville site, is exactly the type of collateral attack. Why can't you be doing both at the same time? There are cases where you could. But the timing and the sequencing of this, when you're dealing with multiple sites and a regional problem, we cannot escape. But, Abe, if the EPA is looking at the possible, or what you think are the source sites, and what New Jersey thinks are the source sites, and citizens bring a suit with regard to the, where we are now, or perhaps the entire ball of wax, I'm not sure, that sounds like it's a federal court should deal with a federal agency cleaning up a regional site. The federal agency has made. Or coming up with a regional plan. The state agency, after taking into account a great deal of sampling upriver, downriver, and across the site, has made a determination that there is no or little ecological value to cleaning up the sediments in front of our site, and that the only way to do this in a way that is protective of the public health and the environment and is not wasteful of the tremendous resources involved with any type of river cleanup, is to do it in a coordinated regional fashion. Is there any reason why the Able District Judge couldn't manage this in a way that, as you said, makes sense? I believe that the Able District Judge is in a much more difficult situation to manage this.  All of the other sources or potentially responsible parties in front of him or her. He does not have the ability to issue information requests, get that kind of information, impose cleanups on the sites that are continuing to contribute contamination into the river. The only entity that truly, or entities that are truly in a position to do this effectively, is the state of New Jersey or the Environmental Protection Agency. And it's exactly what is happening in the Passaic River, in the Kalamazoo River. But Congress, in passing these acts, providing for citizen suits, must have thought that there was another way to do it. Congress never passed an act which provided for the district courts to act as a super EPA or DEP. It passed an act that said that, whether Clean Air Act, Clean Water Act, RCRA, there are many citizen suit provisions that allows citizen suits to supplement but not supplant. Congress provided for specific instances where a citizen suit would have to take a second place behind action being taken by EPA or the State Environmental Agency, right? It did. And those circumstances don't exist here? They are not. They do not exist here. However, as this Court is well aware, there are many doctrines that have been fashioned by this Court for abstention that ultimately recognize that in certain limited circumstances, important countervailing policy considerations of federalism and comity also ought to be taken into account. Yeah, but as you know, the blink response is pretty much that given by Judge Posner in the Sherwin-Williams case. I mean, it's, you know, it looks like an end around federal statutes. I mean, I don't know of any appellate case that's gone your way and said, yes, we should have abstention. Or primary jurisdiction, either one. I think that the appellate case, well, I don't know that many appellate cases, you're right, there's a seventh in the First Circuit, and they came down under the very specific facts of those cases, applying the very same factors that Judge Posano applied. Everybody's gone through the same analysis. They all recognize the unflagging, virtually unflagging, responsibility for the federal court to exercise jurisdiction. They understand what the factors are under Burford abstention. They understand what the factors are under primary jurisdiction. There was nothing unique or special or different about Judge Posano's review except, at the end of the day, a definite and firm conviction that the relief he was asked to make was, one, declare that the three lagoons, the tertiary lagoons on our site, are a source of contamination in the river when extensive sampling and an agency that is dedicated to the protection of the public health and the environment. But that comes back to Judge Sirica's point that maybe this judge is going to sit back and say, hey, I agree with the DEP that the tertiary lagoon is not responsible for this. One other thing that I think the court needs to consider is that this is now a brownfields development site, and another important public policy is involved here, which is trying to coordinate both the redevelopment and the remediation in a way that not only protects the public health but also provides for economic development. Is the brownfields program being done in coordination with the EPA or solely by the state? Right now it's being done, as my understanding, solely by the state. There are 40,000 hazardous waste sites in this country. About 1,200 of them show up on the national priority list. There has never been a situation where there is a need for cooperative federalism between the state and federal governments. My understanding, correct me if I'm wrong, but in Region 3 that the EPA and the New Jersey DEP have worked hand in glove pretty darn well for a long time. And there's no doubt in my mind that this is not an NPL site because of that cooperative effort. DEP is ahead of the curve. It doesn't wait to find a hazardous waste site. It says that if you're going to transfer any industrial property, you've got to evaluate it, investigate it, and find out whether there's a problem, and if so, clean it up. Stuck between, that's a wrong way to put it, placed between geographically New York and Pennsylvania, the recipient of many of the wastes, plus our own history, long history of industrial operations and a small land area, New Jersey does not stand behind anybody in terms of its enforcement of the environmental laws. It has provided for a uniformity. And if every time anybody disagrees with the conclusion of regional or this is or is not a source of contamination and can go into federal court, you will disrupt this type of brownfields development because it simply is disruptive. I'm not sure we know that. I mean, in effect, if you've got a district court judge in New Jersey, who's lived, I think, in New Jersey his entire life and understands what's going on here, I'm not so sure in the end you don't prevail. What we're really talking about is at what forum do we have this before. And, in effect, what you're asking us to do is to go out on a limb, say that, hey, something that the Supreme Court tells us should happen in the most rare of circumstances, hey, this is it, we should go and do it, where it seems that, again, almost every judge's blink response is going to be that of Judge Posner, that federal courts deal with federal statutes, especially with citizen suits that are allowed under federal statutes. And you've got a federal agency also actively involved in the very process of this regional plan here. If federal courts under 1332 deal with state matters under diversity, why in the world would they not deal under 1331 with federal matters? I don't think it's ever been, Your Honor, a matter of whether the federal courts have the competence. I think the issue is who is best situated to make that determination and whether the federal courts, because of federalism, should abstain when what is being alleged in the complaint is really a collateral attack on a technical decision in which is really vested, for the most part, in the discretion of the agency. What is the timing of the plan right now? When is everything supposed to be completed in connection with everything, including the Brownfields policy here? The remedial action work plans for the site have been submitted. One has been approved for parcel A. That parcel, by the way, was dedicated. It's 83 acres, dedicated to open space because of the active participation of the two appellants. And what's the timetable on the remediation for that 83 acres? I would believe that it's going to be a couple of years because the remedial action work plan has to be approved. It has to go in the field. You have to do post-excavation sampling to make sure all of the conventional, as well as the other types of contaminants that have been found, have been remediated. And then, at that point, I believe you would get a no-further-action letter. We expect a no-further-action letter for 83 acres, parcel A, very shortly. This has now been turned over, as you well know, pursuant to an MOU, to the Cerebral Economic Redevelopment Authority, and you have the state who has committed to see this process through to the end, not only because it's its duty. It's good economic development. Well, it's also committed $20 million to make sure that this is cleaned up properly. I am way over time. I would like to say, Your Honors, that I think that, to esteemed counsel, the matter was very well briefed, and so you certainly have an awful lot of information in the briefs. Unless you have anything further, I thank you for your time. No, thank you, Mr. Gibson. Mr. Bono? Morning. Good morning, Your Honors. Alexander Bono, on behalf of Cerebral Seaport Associates, the Brownfield redeveloper, BDA, BDA, BDA. Your Honor, I repeat that three times because it is the cardinal distinguishing feature of this case from every other case that was cited in every brief. I asked the appellants to cite one case, one case, involving Burford, involving primary jurisdiction, where the state has committed $20 million through SARA, the Economic Development Authority, to my client's remediation. Cite another case where a private company, like my client, has committed $20 million to remediation of the NL site, and another $10 million, that's $50 million, it's committed to the remediation of this site on the land. How much is committed to the settlement? Your Honor, we are expressly excluded from the settlement piece. I am distinguished, as is SARA, as is the county in this case. We were named for some reason, despite the fact that we're fixing this problem that has festered for decades at this site. And why is the timing on the region, Judge Ambrose? You may be right, but what makes the difference in the end if you're before Judge Pisano or the state authority? It sounds like Judge Pisano conceivably might be quite favorable your way after looking at the facts. Your Honor, I'm convinced we convinced Judge Pisano that we're right. I'm not convinced that Judge Pisano, based on whatever record comes out, may not say, I'm going to let that go to the jury to decide, which would have the express problem of disrupting the global remediation plan. And, Your Honor, I want to address the question you asked about timing. This regional approach, it's clear. It's clear what the New Jersey DEP is doing here. It's a rational approach. First, it's attacking a source. We're cleaning that up. We weren't part of the problem. We're part of the solution, but we're a defendant. We're cleaning it up. And we came in in 2007. Well, Your Honor, 2004, they're looking at the regional approach. 2007, they say, you get that site. The EPA is getting upstream. There's a global remediation of the Raritan River going on now. And is there a wrap to do the sediments? Not yet. Not yet. That's not my piece of the puzzle, Your Honor, but it's clear what's going on here is that the New Jersey DEP, in coordination with the EPA, has a strategic plan for remediating the river. And to take that to Judge Pisano and say, Judge Pisano, you got one piece of the puzzle, that's not fair. It's not fair to the parties. It's not fair to the policy of brownfields. And it's not fair to the policy of the federal environmental laws. And these are not novel concepts that we're talking about. I mean, primary jurisdiction and Burford abstention go back, as far as I read the Constitution, to Article III, Section 2, the inherent equity powers that federal courts have always had. Congress doesn't give them that. But the Constitution gives federal courts your equity powers. We respectfully submit. But the Supreme Court has made it clear that abstention is to be very rare. Absolutely, Your Honor. And this we submit, particularly for SSA, my client, for SARA, the Redevelopment Authority, and for the counties that are defendants in there. This is the exact rare situation that the Supreme Court is talking about, because we're remediating the brownfield piece under a state statute, under a state policy. Your Honor, I want to respond to one of the things that Mr. Turr said, because at Appendix 161, we argued to the lower court, and the lower court never got to it. The plaintiff's second, fourth, fifth claims under the Clean Water Act should be dismissed because they're barred by the DPA's, New Jersey DPA's enforcement action under Section 1319G6. Your Honor, we argued that we paid a penalty. And when you look at the four-party agreement that we published to the public, to which there were no comments received, we told everyone, we're paying like a million-dollar penalty here to eliminate our environmental liabilities, which my client assumed. What is the Burford Doctrine? What does it say? Burford Doctrine essentially says we will refer a matter to a state agency that has superior expertise to deal with a problem. Under when we are sitting in equity. When the state agency is dealing with difficult questions of state law and the federal review will be disruptive. We don't know, working backwards, as to whether the federal review will be disruptive at all, and it looks like we're talking about federal statutes. I realize that there are state statutes involved, but principally we're dealing with federal statutes, are we not? Your Honor, we're dealing with state statutes for the remediation, but also within the settlement agreement that we signed, that NL signed, that the New Jersey DEP signed, we excluded any liabilities that might be under the Clean Water Act or any other federal act, which would include RCRA, to come into this project, to invite us to come in to this festering hole that for years has sat there to help fix it under the Brownfield redevelopment. We were invited to come in, assume liabilities, and say, those liabilities go away, even under the federal acts. Of the two doctrines that Judge Pisano relied on, primary jurisdiction and Burford abstention, which do you think is stronger for you? I think primary, Your Honor. And I think this Court must, for the sake of redevelopers like my client, articulate a clear standard in this circuit. The lower courts are relying on global maps. The court out in Santa Fe had a five-part test, which was somewhat different. Here we have the global maps, the four-part test. And so, I mean, if you take a look at those things, you've got whether the question at issue is within the conventional expertise of judges or whether it involves technical or policy considerations within the agency's particular field of expertise. You want to deal with that one first? Your Honor, Judge Pisano weighed that correctly, we say, that there was particular expertise because of what's going on here. There's Brownfield redevelopment and there's a regional approach that involves parties that are not part of the litigation. So he's saying they have an expertise that I don't have. That sort of bleeds into the second thing, which is whether the question at issue is particularly within the agency's discretion. It sounds like the big issue here, which is the regional and the upstream sites are within the particular discretion of the EPA and not the state agency. Your Honor, I think they have concurrent jurisdiction over that, and they are working in tandem. As again, Your Honor, I say they're working in tandem. And when you look at the big picture, you have to take a step back and look at what's occurring at the Raritan River. You have the EPA acting aggressively on two sites up the river because, as the letter from the NJDEP said, what are we going to clean up the lower portion for if it's just going to come down and recontaminate again? It's going to waste everyone's resources. And I say the EPA and the New Jersey DEP are looking at that. And to ask Judge Pisano to do it is the parties aren't before him. And he can't fashion a remedy that addresses upstream. And that sort of leads to the third factor, whether there exists a substantial nature of inconsistent rulings. We have no clue as to whether there will even be a single inconsistent ruling if this goes before Judge Pisano, do we, at this point in time? Your Honor, we can't predict what Judge Pisano is going to do other than to say what the opponents are asking is to make Judge Pisano a micromanager of an environmental cleanup site. And that could lead to an inconsistent ruling because the state EPA and the federal EPA has engineers, geologists, expertise to transcend, despite the learned position that the court has, expertise that transcends what I have, what a court would have, the resources that those agencies have dwarf what a court would have. And the court doesn't have the resources to hire experts. That's in every single administrative law case in America, isn't it? I mean, no judge knows what the administrative agency knows at the outset. Correct? Your Honor, some judges come out of the agencies. So I'll give them the benefit of the doubt. You're right. But most of us come from different backgrounds. And so, but you still end up in federal court before judges who perhaps are generalists. That happens all the time. Happens all the time, Your Honor. I agree. That's why you have administrative law. I agree, Your Honor. But the expertise required for this type of case is different. And I'm not saying that applies in every case. What I'm saying is my case, for my client, for Sarah and for the county, and although Mr. Torres says I don't have a claim against the site, he sued us, what I'm saying is we're different. And in our situation, that kind of difference differentiates us. And at a minimum, at a minimum, the courts holding below should be affirmed as to my client, as to Sarah, and as to the county because we're so different from NL in this situation. Anything else?  Mr. Bono, thank you very much. Thank you, Your Honor. Mr. Kenney. Good morning. Good morning, Your Honor. I'll do my best to stay on my one minute. I won't repeat anything that's already been said. Mr. Bono was on our time, so that's perfectly fine. I do want to say that I think that this is exactly the kind of very rare case where the abstention doctrine should be applied because of what Mr. Bono pointed out. What we pointed out is this is a very rare and unique circumstance that has not been before the court before. What we have is an economic redevelopment act in the state of New Jersey by which Sarah was created, not for the purposes of making somebody just clean up a field, which is an admirable thing to do, but for doing more than that in the big public policy picture. We have a unique partnership of our organizations who have come together with public and private funding in order to effectuate not just a cleanup, but more than that, economic redevelopment of a blighted area. How does the citizen suit case disrupt that? I'll tell you what it does, Your Honor. What it does is it takes the resources that we have gone to from private industry and from public funding, which we were able to get because of our economic redevelopment act, and put $40 million together, $20 million in public funds, $20 million in private funding, in order to do more than just clean it up, but to redevelop it for a bigger public good. That is the rare instance where the chilling effect that this will have on New Jersey's economic redevelopment act will be substantial because it's not just this area. There are other areas that Saraville and other areas of the state of New Jersey wants to clean up the brown fields and make them economically redeveloped, not just clean, but more than that. Residential, commercial, open space, the 83 acres that we've already dedicated, and we are very close to having that cleaned up and done. That was our first and primary goal. You say you're close to finishing that? We expect to have it done, and I can't give you an exact time because we don't know, but parcel A, the 83 acres that are set aside, is close to being submitted for approval. I'm sorry. Is there any doubt in anyone's mind that if Judge Pisano had jurisdiction in this case, that he would not take into account the interests, your interests and the interests of cleaning up matters upstream as well? I have no doubt, but I also have no doubt that Judge Pisano, when he ruled on this, was in the best position to decide that in this very rare instance, because of the nature of Sarah's involvement and SSA's involvement, that this is exactly the rare instance. In order not to have the chilling effect on the bigger public policy of not just cleanup but redevelopment, we should apply this standard. It may have a chilling effect, but if somebody as good as Judge Pisano is in charge of the case, it probably will not. What I think I want to make sure that we all understand is, this isn't an abdication of jurisdiction. It's an abstention of jurisdiction at this time. If we get down the road 10 years, 5 years, some period in time when public citizens say, hey, you are trying to end the run, you are trying to get around, you're doing nothing, which is not going to be the case in this instance because we're so far down the road already. Further than everywhere else, we're ahead of the game. We're doing it faster and cheaper. But should that ever be risen, the court can address it at that time. Should that be the case at somewhere down the road that they say you're not doing it. But that's not where we are today. Judge Pisano has ruled that this is an appropriate application of abstention now. And that's what we ask. Any other questions? Thank you very much. Thank you very much. Mr. Terris, will Judge Pisano have, will he be able to look upstream and affect remedies, dealing with the upstream management? I don't think he would have the power to deal with the Superfund sites, for example, that are upstream. But he has broad discretion to decide when the remedy he's going to impose, if he's going to impose a remedy, and when he's going to impose it. He doesn't have to say I'm going to be first and pay no attention as to whether there's been a remedy upstream. I might say, by the way, this is not going to ever go to a jury. It's going to go to Judge Pisano. We understand that. The question, what in effect is being said is, look, forget all the theory. Yes, the theory supports federal courts enforcing federal cases. There's no doubt about that. And there's two circuits that are lined up that way. But practically, this has gone so far down the road with a state agency, with the blessing of the EPA. What in the world do you want to interfere with it now? And, in effect, what Judge Pisano was saying is, as a practical matter, I think they're right. Your Honor, if we were litigating, the defense started litigating before, Your Honor, the case we didn't bring. We deliberately did not bring the on-site case. We looked at that for a whole year. And we looked at all the things that were going on, and we made a decision that we should not, and maybe could not, but at least should not bring a case in which so much activity was going on, all the activity that's been described to you, the commitments of money and effort. And we did not bring that case. We brought a case involving sediment in the river, and there was nothing going on to the remediation of sediment in the river. Now, correct me if I'm wrong on this. The four-party settlement agreement was submitted for public comment or opportunity to comment on it. Not the settlement agreement. It was the agreement about the on-land. The on-land. And that agreement, though, or whatever you're going to call it, from the state of New Jersey, indicated they were not going to address the sediment issue. Because if they did, it would just come back again because the source is upstream. And so why force people to do something today to spend money unnecessarily when the problem is going to be back tomorrow, no matter what you do with regard to this particular sediment? There is no careful analysis of that. So we dispute that. And that, we think – Well, I think that's how NJDEP came out, did it not? That's right. And one letter in one sentence with essentially no analysis. We have the right, we submit under the two statutes, especially RCRA, in order to challenge that since we submit are not barred. If we were barred in this suit, essentially, and that became the law of the country, there would be no RCRA. Well, I'm not sure it would be law of the country. You'd have a circuit split. No, I said if it became law of the country, if Your Honor decided against this and all the other circuits or the Supreme Court agreed with you. This case is not atypical. Every one of the cases has some activity by the state, very desolatory in this case. It's been going on since the 1980s that they've been looking at this overall site. And like Honeywell, went on forever, and we submit times up. The federal courts have jurisdiction, and they should look at it. And Judge Bassano will undoubtedly take into account all the things that have been argued here, and he will fashion in his broad discretion in issuing injunctive relief, the kind of injunctive relief that makes sense. It may delay, for example, the remedy of the settlements for five or ten years. He might do that. If the defendants established that the settlements were being so contaminated upstream that it would make no sense to remediate them at this time, then we wouldn't want to remediate, and certainly the court wouldn't want to. And so we submit this is a typical situation where the federal courts have the capacity. Congress decided they had the capacity, and they do have the capacity. If you need any proof of that, Honeywell is a perfect example. Not only did this court affirm that ruling, but that enormous site, that enormous site has been cleaned up. It has been completely cleaned up, and now it's starting on the settlements. And it's an example of how federal judges have the capacity to deal with these issues, and we submit Judge Bassano does too. Okay. Any other questions? Thank you. Good. We thank counsel for excellent argument. We'll take the matter under advisement. I think it would be a good thing to have a transcript made of the oral argument here. I'd ask the parties to share in the costs, and please check with the clerk's office. They'll tell you how to do that. Will it cost more ways? Well, I think we've got to split them here. Okay. Good. You can split them evenly here between both sides. Good. Thank you, gentlemen, very much.